1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                            CENTRAL DISTRICT OF CALIFORNIA

10

11   SARPOOHI RATAVOSIAN,            )   NO. CV 04-3899-MAN
                                     )
12                  Plaintiff,       )
            v.                       )   MEMORANDUM OPINION AND ORDER
13                                   )
                                     )
14   JO ANNE B. BARNHART,            )
     Commissioner of the            )
15   Social Security Administration, )
                                     )
16                  Defendant.       )
     _____)
17

18          Plaintiff filed a Complaint on June 8, 2004, seeking review of the

19   denial  by  the  Social  Security  Commissioner  ("Commissioner")  of

20   Plaintiff's claim for supplemental security income benefits ("SSI").  42

21   U.S.C. § 1388(c)(3).  On July 2, 2004, the parties filed a "Consent to

22   Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C.

23   § 636.  The parties filed a Joint Stipulation on May 18, 2005, in which:

24   Plaintiff seeks an order reversing the Commissioner's decision denying

25   benefits and remanding the case to the Commissioner for a new hearing;

26   and Defendant requests that the Commissioner's decision be affirmed.

27   The Court has taken the parties' Joint Stipulation under submission

28   without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on November 14, 2002. (Administrative Record ("A.R.") 49-54.) Plaintiff claims to have been disabled since June 10, 2000, due to migraine headaches, severe depression, severe arthritis, dizziness, and heart problems. (A.R. 49, 59.) Plaintiff has no past relevant work experience. (A.R. 22.)

The Commissioner denied Plaintiff's claim for benefits. On December 15, 2003, Plaintiff, who was represented by a non-attorney, appeared and testified at a hearing before Administrative Law Judge Joel Martinez ("ALJ"). (A.R. 173-96.) In a March 1, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 12-23, 4-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his March 1, 2004 decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 21.) He found that Plaintiff is a "younger individual," pursuant to 20 C.F.R. § 416.963, and has a limited education and is "unable to communicate in English" fluently, pursuant to 20 C.F.R. § 416.964. (A.R. 22.) He found that, when Plaintiff's impairments are combined, they are "severe," consisting of a history of muscle spasms in the cervical and lumbar spine, mild scoliosis of the thoracic spine, tension headaches, and a mood disorder, not otherwise specified, but she does not have an impairment or combination of

impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (*Id.*)

The ALJ found that Plaintiff has the following residual functional capacity:

> [Plaintiff can] perform work at the medium level of exertion (lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday), but she is limited to no climbing or balancing, and no work at unprotected heights or around dangerous machinery.  She also is restricted to limited contact with the public and co-workers.  She is also restricted to simple work in a low stress environment.

(A.R. 22.)  The ALJ found that "[Plaintiff's] allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision."  (*Id.*)

The ALJ further found that Plaintiff has no past relevant work. (A.R. 22.)  Relying upon the testimony of a vocational expert and using Rule 203.25 of the Medical-Vocational Guidelines (the "Grids") as a framework, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform, such as a hand packager, domestic day worker, and kitchen helper.[1]  (A.R. 21-22.)  Thus,

---

[1]   Rule 203.25 directs that a person who is a "younger individual," has a "limited or less" education, and is "unskilled," is not disabled.  20 C.F.R. Pt. 220, App. 2.

3

the ALJ concluded that Plaintiff was not disabled.   (A.R. 22.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).   This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  Id. at 1041; see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th

4

1  Cir. 1995).

2                                **DISCUSSION**

3

4       Plaintiff alleges six disputed issues.  <u>First</u>, Plaintiff contends

5  that the ALJ failed to obtain a proper waiver of Plaintiff's right to

6  counsel.  <u>Second</u>, Plaintiff contends that the ALJ failed to develop the

7  record fully and fairly.  <u>Third</u>, Plaintiff contends that substantial

8  evidence does not support the ALJ's finding that Plaintiff has the

9  mental impairment of mood disorder, not otherwise specified.  <u>Fourth</u>,

10 Plaintiff contends that the ALJ improperly rejected the findings of

11 Plaintiff's treating doctors.  <u>Fifth</u>, Plaintiff contends that the ALJ

12 improperly rejected Plaintiff's credibility.  <u>Sixth</u>, Plaintiff contends

13 that the ALJ's hypothetical to the vocational expert was improper.

14 (Joint Stip. at 4.)

15

16 **A.   <u>The ALJ's Finding Regarding Plaintiff's Physical Limitations Is</u>**

17      **<u>Affirmed, But The ALJ Improperly Rejected The Evidence Regarding</u>**

18      **<u>Plaintiff's Mental Impairments Submitted By Her Treating</u>**

19      **<u>Physicians, And The Record Must Be Further Developed Regarding</u>**

20      **<u>Plaintiff's Mental Limitations</u>**.

21

22      There is no requirement that a claimant must be represented by

23 counsel at an administrative hearing.  <u>Cox v. Califano</u>, 587 F.2d 988,

24 991 (9th Cir. 1978).  However, "where the claimant is not represented,

25 it is incumbent upon the ALJ 'to scrupulously and conscientiously probe

26 into, inquire of, and explore all the relevant facts.'"  *Id*. (quoting

27 <u>Rosa v. Weinberger</u>, 381 F. Supp. 377, 381 (E.D.N.Y. 1974)); *see also*

28 <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561-62 (9th Cir. 1991).   Thus, in

                                      5

determining whether a claimant's interests are adequately protected in an administrative proceeding when she is proceeding without counsel, "the issue is not whether the right to representation was knowingly waived, rather it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by [Cox]." Vidal v. Harris, 637 F.2d 710, 714 (9th Cir. 1981)(quotations omitted).

Plaintiff contends that the ALJ erred by not informing her of her right to proceed with counsel.  (Joint Stip. at 6.)  In addition, Plaintiff contends that the record was not fully and fairly developed because: 1) records furnished by her treating physicians, Dr. Razmik Ohanjanian and Dr. David Barcohana, primarily consist of illegible handwritten notes which do not disclose the severity of Plaintiff's impairments or her residual functional capacity; and 2) there are no records from Dr. Ara Kadoyan, Plaintiff's treating psychiatrist. (Joint Stip. at 7-8.)  In addition, Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Ohanjanian and Dr. Barcohana. (Joint Stip. at 9.)

Although Plaintiff errs in arguing that she has a "right" to counsel, the Court concludes that the ALJ failed to carry out his duty to "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts" with respect to Plaintiff's mental limitations, for the following reasons.  However, the ALJ's finding regarding Plaintiff's physical limitations is affirmed.

///

///

///

6

1.   **The ALJ's Finding Regarding Plaintiff's Physical Impairments Is Affirmed**.

In assessing whether the record with respect to Plaintiff's physical impairments must be further developed by re-contacting Dr. Ohanjanian and Dr. Barcohana, 20 C.F.R. § 404.1512(e) provides that:

(e) When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

7

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e). *See also* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. § 404.1512(e), that the Commissioner re-contact treating sources, is triggered only where the information from the treating sources is inadequate to make a determination regarding disability).

The ALJ need not re-contact Dr. Ohanjanian simply because Plaintiff contends that some of his records are illegible, for the above requirement is triggered only when the information submitted from the treating sources is <u>inadequate</u> to render a disability determination.[2] Here, the ALJ specifically asked Dr. Thomas Maxwell, the non-examining medical expert and internist, "[I]s there sufficient objective medical evidence to form an opinion as to her physical condition?"; Dr. Maxwell responded affirmatively. (A.R. 186.) Dr. Maxwell noted no difficulty reading the pertinent portions of the records of Plaintiff's treating physicians, and he relied upon the x-rays submitted from Plaintiff's treating physicians in reaching his opinion. (A.R. 186-90.) Thus, even though none of Plaintiff's treating physicians opined as to Plaintiff's limitations, their records were adequate for the ALJ to determine

---

[2]    The Court notes that, although Dr. Ohanjanian's name is spelled two different ways in the record, it has adopted the spelling used by the ALJ for this opinion. (*See* A.R. 105-06 -- records noting "Razmik Ohanjanian" and A.R. 107 -- records noting "Razmik Ogandjanian.")

1   Plaintiff's work limitations based on the medical expert's opinion.  The
2   duty to re-contact Plaintiff's treating physicians as to Plaintiff's
3   physical condition therefore was not triggered.

4

5       Plaintiff further contends that the ALJ improperly rejected the
6   opinions of Dr. Ohanjanian and Dr. Barcohana.  Ordinarily, the opinions
7   of a treating physician should be given great weight, if not controlling
8   weight.  *See* Social Security Ruling 96-2p; *see also* <u>Magallanes v. Bowen</u>,
9   881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are
10  entitled to great deference).  When the ALJ rejects the opinion of a
11  treating physician, even if it is contradicted, the ALJ may reject that
12  opinion only by providing specific and legitimate reasons for doing so,
13  supported by substantial evidence in the record.  <u>Lester v. Chater</u>, 81
14  F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715,
15  725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors'
16  opinions and relying upon Social Security examiners' opinions in finding
17  that claimant's chronic fatigue syndrome had not rendered her disabled).
18  Broad and vague reasons will not suffice for rejecting the treating
19  physician's opinion.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th
20  Cir. 1989).  When a treating doctor's opinion is uncontradicted, it may
21  be rejected by an ALJ only "for 'clear and convincing' reasons supported
22  by substantial evidence in the record." <u>Holohan v. Massanari</u>, 246 F.3d
23  1195, 1202-03 (9th Cir. 2001)(citation omitted); <u>Reddick</u>, 157 F.3d at
24  725.  These same rules govern the ALJ's consideration of the opinions of
25  examining physicians.  <u>Lester</u>, 81 F.3d at 830-31.

26

27       In discussing the records from Dr. Ohanjanian, the ALJ stated:

28

The record contains progress notes and diagnostic reports from
Dr. Ohanjanian from mid-April 2002 to mid-November 2002
(Exhibit 1F).  The doctor's progress notes regarding clinical
examinations contain numerous subjective complaints but few
truly objective clinical findings of any significance.  Even
with respect to subjective complaints, Dr. Ohanjanian never
indicated that [Plaintiff] reported dizziness or syncope on a
review of systems, because he never circled those symptoms.
He also never circled fatigability or weakness, and circled
shortness of breath only once.  The doctor gave multiple
diagnoses that were based primarily on subjective complaints,
given the lack of clinical findings.  Further, the doctor gave
mental diagnoses even though he does not appear to specialize
in mental health and provided no evidence that he ever
performed a comprehensive mental status examination.

(A.R. 15.)


    The record shows that the ALJ accurately summarized Dr.
Ohanjanian's records regarding Plaintiff's physical symptoms.  Dr.
Ohanjanian diagnosed Plaintiff with migraine headaches in his
handwritten notes.  The format of his medical records provide for him to
indicate a patient's headache symptoms, including dizziness, by circling
the appropriate symptom.  Dr. Ohanjanian never circled dizziness as a
symptom for Plaintiff, and he only once noted "fatigue" in his
handwritten notes in connection with her headaches.  (A.R. 105-06, 111-
14 -- Dr. Ohanjanian's treatment records from April 30, 2002 through
November 19, 2002 showing diagnosis of migraine headaches, but not

1  circling any related headache symptoms; A.R. 118 -- April 10, 2002

2  records reflecting a handwritten note of "fatigue" in connection with

3  Plaintiff's headaches.)    Indeed, Plaintiff fails to state what

4  limitation found, or opinion expressed, by Dr. Ohanjanian the ALJ

5  specifically rejected that, if credited, would have more significantly

6  limited her physical residual functional capacity.    Thus, Plaintiff's

7  argument that the ALJ improperly rejected Dr. Ohanjanian's opinions as

8  to her physical impairments is unavailing.

9

10      In discussing the records of Dr. Barcohana, the ALJ stated:

11

12      [Plaintiff] began seeing Dr. Barcohana in April 2003 through

13      mid-June 2003 (Exhibit 9F).   Progress notes from the doctor

14      are quite cursory and contain few objective findings of

15      significance.   The doctor noted muscle spasm of the cervical,

16      thoracic, and/or lumbar spine.   [Plaintiff] briefly had

17      physical therapy.   An x-ray of the cervical spine in June 2003

18      revealed severe limitation of flexion motion but was otherwise

19      unremarkable.   An x-ray of the thoracic spine at that time

20      showed mild scoliosis and was otherwise unremarkable.   In mid-

21      June 2003, the doctor referred [Plaintiff] to a psychiatrist.

22

23  (A.R. 16.)

24      Dr. Barcohana's treatment records span the three-month period from

25  April through mid-June 2003.   (A.R. 150-71.)   Dr. Barcohana noted

26  Plaintiff's physical symptoms, such as tenderness and spasm in the

27  cervical, thoracic, and lumbar spine.   (A.R. 153, 155, 160-61, 163-64,

28  168-69.)   Although Plaintiff contends that the ALJ improperly "rejected"

11

the treatment records of Dr. Barcohana, the ALJ's decision shows that he simply and accurately described the records of Dr. Barcohana with respect to her spine.   Furthermore, like Plaintiff's argument with respect to Dr. Ohanjanian's opinions regarding her physical condition, Plaintiff fails to set forth what diagnosis or opinion of Dr. Barcohana that the ALJ improperly rejected.   Thus, Plaintiff's argument that the ALJ improperly rejected Dr. Barcohana's opinions as to her physical condition is similarly unavailing.

In reaching his ultimate conclusion regarding Plaintiff's physical residual functional capacity, the ALJ relied largely upon the opinions of Dr. Maxwell and Dr. Soheila Benrazavi, an internist who examined Plaintiff at the request of the Commissioner on January 3, 2003. Plaintiff's argument that the opinion of Dr. Benrazavi must be rejected, as a matter of law, because she only examined Plaintiff on one occasion is incorrect.   The opinions of other physicians -- examining physicians and nonexamining, testifying medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported.   *See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan v. Commissioner of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").

In a January 2, 2003 report, Dr. Benrazavi found that Plaintiff has the residual functional capacity for work at the "medium" exertional

level and can stand, walk, and sit for six hours out of an eight-hour workday.  (A.R. 126.)  Finding that Plaintiff had a slightly more restricted residual functional capacity, Dr. Maxwell testified that Plaintiff:  can lift and/or carry 40 pounds occasionally and 20 pounds frequently; can sit, stand, and/or walk six hours out of an eight-hour day; and cannot climb, balance, or work near unprotected heights and hazardous machinery.  (A.R. 189.)

Here, Dr. Benrazavi's opinion rested on her own examination of Plaintiff and is consistent with the January 13, 2003 state agency opinion, which provides the same limitations.  (A.R. 132-38.)  Where there is a conflict in the medical opinions, the ALJ is entitled to resolve the conflict.  <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190, 1195 (9th Cir. 2004)(when there are conflicting medical opinions, the ALJ must resolve the conflict); <u>Thomas</u>, 278 F.3d at 956 (same); <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992)(same).  Substantial evidence therefore supports the ALJ's finding regarding Plaintiff's physical limitations.

Accordingly, Plaintiff's arguments regarding the ALJ's errors pertaining to her physical impairments are rejected.

**2.** **<u>The ALJ Must Develop And Clarify The Record Regarding Plaintiff's Mental Impairments; The Opinions Regarding Plaintiff's Mental Impairments Rendered By Plaintiff's Treating Physicians Were Improperly Rejected</u>.**

As with Plaintiff's physical impairments, the ALJ had a duty to

13

ensure that the record was fully developed with respect to Plaintiff's mental health problems. At the December 15, 2003 hearing, after Plaintiff's representative stated that he had attempted to obtain records from Dr. Kadoyan, but had not been successful, the ALJ clearly knew that Plaintiff had a treating psychiatrist whose records were not contained in the record. (A.R. 182-84.) The ALJ briefly discussed Dr. Kadoyan's treatment of Plaintiff in his written decision, stating: "[w]ith respect to her mental health, [Plaintiff] testified that she has seen a psychiatrist, Dr. Kadoyan, who prescribes medication. [Plaintiff] has only recently been treating with the doctor, and she testified that she sees him only once a month." (A.R. 19.) Certainly, as Plaintiff's treating psychiatrist, this doctor's records bear directly on Plaintiff's mental residual functional capacity, even if this doctor only treated Plaintiff briefly. Thus, after learning the identity of Plaintiff's treating psychiatrist, the ALJ should have sought to obtain his records, especially because Plaintiff was not represented by an attorney at the hearing. Cox, 587 F.2d at 991; see also Higbee, 975 F.2d at 561-62.

In addition to Dr. Kadoyan, three other physicians -- Dr. Ohanjanian, Dr. Barcohana, and Dr. Solemon Hakimi -- diagnosed Plaintiff with depression, even though they primarily treated her for physical impairments. For instance, Dr. Ohanjanian diagnosed Plaintiff with major depression, and prescribed Paxil, an anti-depressant medication for her depression. (A.R. 113-14.) Dr. Barcohana noted Plaintiff's depression (A.R. 164, 168, 169) and her fatigue (A.R. 171). Dr. Hakimi also diagnosed Plaintiff with anxiety and depression, and he noted her symptoms of insomnia and fatigue. (A.R. 149.) The ALJ stated in his

14

opinion, however, that:  "I give less weight to the mental diagnoses proffered by the various physicians of record who neither specialize in mental health treatment nor performed anything similar to the mental status examination performed by the consultative psychiatrist (Dr. Ohanjanian, Dr. Hakimi, Dr. Barcohana, and Dr. Maxwell)."  (A.R. 14.) The ALJ's reason for rejecting the opinions of Plaintiff's treating physicians, Dr. Ohanjanian, Dr. Barcohana, and Dr. Hakimi, *i.e.*, because they do not specialize in mental health, is neither specific nor legitimate. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(it was improper to discount the opinions regarding the claimant's mental condition made by her treating doctor on the grounds that he was not a Board-certified psychiatrist, because he treated the claimant's mental problems by prescribing psychotherapeutic drugs and his opinions regarding her mental condition were based on clinical observations of her depression).

Furthermore, the record shows that the ALJ's mental residual functional capacity assessment -- that Plaintiff is "restricted to limited contact with the public and co-workers" and "restricted to simple work in a low-stress environment" -- is in error, because it not based on the clear opinion of a qualified professional.  Aside from the opinions of Plaintiff's treating physicians and the opinion rendered by Dr. Maxwell, the remaining January 15, 2003 consultative report by Dr. Suzanne Dupee, who examined Plaintiff at the request of the Commissioner, was given "less weight" by the ALJ.  (A.R. 18.)  The ALJ's mental functional capacity finding, while not entirely inconsistent with

Dr. Dupee's findings, is not taken directly from them.[3]  Plaintiff's argument that the ALJ improperly found that Plaintiff suffers from "mood disorder," rather than depression, is well-taken, as no doctor has diagnosed Plaintiff with "mood disorder." (Joint Stip. at 9.)  Thus, it is unclear that the ALJ's assessment of Plaintiff's mental impairment and attendant residual functional capacity assessment is based on substantial evidence, rather than on an improper rendering of his own medical opinion or judgment.  *See* Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975).

Because the information from Plaintiff's treating sources is incomplete, the record must be developed, and the ALJ then must redetermine Plaintiff's mental residual functional capacity.  *See* 20 C.F.R. § 416.912(e)(duty to re-contact treating physician); Thomas, 278 F.3d at 957.  In further developing the record, the ALJ should inquire of Plaintiff's treating physician(s) as to what precise mental limitations she would experience in the workplace.  Although developing the record may not necessarily show that Plaintiff has a mental residual functional capacity that precludes her from working, the ALJ should have made an effort to do so here, especially in view of Plaintiff's lack of legal representation at the hearing.  Higbee, 975 F.2d at 561-62.

---

[3]   Specifically, Dr. Dupee noted that Plaintiff has "moderate" impairment in her abilities to: "relate and interact with supervisors, coworkers, and the public" and "maintain concentration and attention, persistence and pace," and Plaintiff has "mild" impairments in her abilities to: "understand, carry out, and remember simple one or two-sept job instructions," "complete detailed and complex instructions," "associate with day-to-day work activity, including attendance and safety" and "maintain regular attendance in the workplace and perform work activities on a consistent basis."   However, Dr. Dupee inconsistently noted that Plaintiff had both "moderate" and "mild" limitations in her ability to "adapt to the stresses common to a normal work environment, including attendance and safety." (A.R. 143-44.)

Accordingly, the ALJ's finding regarding Plaintiff's mental residual functional capacity constitutes reversible error.

**B.    The ALJ Properly Rejected Plaintiff's Credibility.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to her subjective symptoms merely because they are not corroborated by objective evidence.  Tonapetyan, 242 F.3d at 1147-48; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  Bunnell, 947 F.2d at 347.

17

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792. In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Oreteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state

18

which pain testimony is not credible and what evidence suggests that the complaints are not credible.  *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688 (9th Cir. 1979); *see also* <u>Lester</u>, 81 F.3d at 834 (an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

In rejecting Plaintiff's claimed symptoms, the ALJ explained, in part, as follows:

> [Plaintiff] exaggerates her symptoms and limitations, and the record contains numerous inconsistencies, which further diminish [Plaintiff's] credibility.  I have already discussed some exaggerations and inconsistent reports in other parts of this decision.  In addition, [Plaintiff] alleges that she has been disabled since June 10, 2000, before she came to the United States (Exhibit 2D), but she subsequently determined that she needed and was in fact able to get a driver's license (Exhibit 10F).  A claims representative at a Social Security Administration field office did not notice anything unusual or abnormal about [Plaintiff] in November 2002 (Exhibit 2E, p. 2).  [Plaintiff] alleges that she is unable to communicate in the English language and testified that she does not speak it at all.  [Plaintiff], however, has a valid driver's license from the State of California, issued in 2003 (Exhibit 10F).  She has lived in the United States since June 7, 2001 (Exhibit 2D, p. 1).  Further, when asked her name at the hearing, she understood the question and responded without using an interpreter.  She also understood and responded to the

19

question concerning her ability to speak English without the
assistance of an interpreter. [Plaintiff] also used some
English words in her testimony.    While I do find that
[Plaintiff] is unable to communicate in the English language
with any fluency, her allegation that she is unable to speak
any English at all is simply not consistent with the record.
[Plaintiff] testified that she does not cook, in part, because
she is afraid to turn on the stove.    She also testified,
however, that she makes tea several times a day.    In a Daily
Activities Questionnaire, dated in December 2002, [Plaintiff]
alleges that she is unable to go out alone (Exhibit 3E, p. 3).
The following year, however, [Plaintiff] wanted and obtained
a driver's license (Exhibit 10F), which seems rather odd in
light of her previous allegations [as] well as her
simultaneous allegation that her physical and mental
conditions were actually getting worse (Exhibit 10E, p. 1).
[Plaintiff] alleges severe headaches, but she testified that
she spends part of an average day watching television and
reading (see also Exhibit 3E, Exhibit 5E). [Plaintiff]
exaggerates her symptoms.    In a Pain Questionnaire,
[Plaintiff] alleged that she has pain "all over my body"
everyday (Exhibit 8E, p.1).    She further alleged that se is
"totally inactive" and is able to walk only one or two blocks
(Exhibit 8E, p.3).    In a Daily Activities Questionnaire,
[Plaintiff] attempts to portray herself as highly dependent on
others (Exhibit 3E).    At the hearing, she testified that she
is "very weak," too weak, in fact to even take her nine-year-
old son to school.    She testified that she is able to walk

only one block, stand only 20 to 30 minutes, sit for only 20
to 30 minutes, and lift no more than five or six pounds.  The
objective medical evidence simply does not substantiate such
gross allegations.

(A.R. 19-20.)

Plaintiff contends that, "[i]n reading the ALJ's alleged
inconsistencies, a reasonable mind would conclude that the ALJ's
inferences are patently flawed since they do not logically flow from the
evidence and do not reflect that [Plaintiff] is less than credible."
(Joint Stip. at 15.)  Plaintiff further contends that the ALJ did not
provide specific, cogent reasons for disbelieving Plaintiff's
allegations, and he did not sufficiently identify what testimony is not
credible and what evidence undermines her subjective complaints.  (Joint
Stip. at 16.)

In rendering a credibility determination, the ALJ is entitled to,
and did, cite significant inconsistencies in Plaintiff's allegations,
statements, and testimony that undermined her allegations regarding her
physical and mental limitations.  Benton v. Barnhart, 331 F.3d 1030,
1040 (9th Cir. 2003)(ALJ may reject a claimant's testimony upon:  "(1)
finding evidence of malingering, or (2) expressing clear and convincing
reasons for doing so"); see also Light, 119 F.3d at 792 (internal
conflicts in claimant's statements are a proper basis for discrediting
allegations regarding limitations).  For instance, at the December 15,
2003 hearing, when the ALJ asked Plaintiff "do you speak any English at
all," Plaintiff repeatedly and clearly responded, "No." (A.R. 177.) As

21

1  noted by the ALJ, Plaintiff's claimed inability to communicate in
2  English is an indicator that Plaintiff is not credible, as Plaintiff
3  appeared to understand the questions at the hearing.  In addition, it
4  was appropriate for the ALJ to cite Plaintiff's ability to pass her
5  driver's license test as a basis to discredit the extremely poor results
6  of the memory test Dr. Dupee administered, as well as her allegations
7  that she could not go out alone and that her physical and mental
8  conditions were worsening.  Furthermore, the ALJ appropriately explained
9  how Plaintiff's allegations of extreme physical limitations, including
10  that she has pain "all over [her] body" everyday and is "totally
11  inactive" and "very weak," are at odds with a lack of objective findings
12  supporting such allegations of severe incapacitation.[4]  *See* Meanel v.
13  Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(affirming the ALJ's rejection
14  of the claimant's testimony of constant pain that required her to lie in
15  a fetal position all day where the ALJ noted that the claimant did not
16  exhibit muscular atrophy or any other physical signs of an inactive,
17  totally incapacitated individual).  Thus, the ALJ has adequately
18  demonstrated that Plaintiff was malingering about her physical and
19  mental limitations, and he was not required to provide further and
20  additional "specific, cogent reasons," as Plaintiff contends.

21
22      Accordingly, the ALJ's finding that "[Plaintiff] exaggerates her
23  symptoms and limitations" rests on substantial evidence and will not be
24  disturbed.

25
26  _____
27      [4]    In view of the numerous and significant inconsistent
    statements made by Plaintiff that the ALJ cited in his credibility
    determination, the cases on which Plaintiff relies (Joint Stip. at 15-
28  16) are distinguishable and inapposite.

C.   **Further Testimony From A Vocational Expert May Be Required**.

As noted above, the record regarding Plaintiff's mental residual functional capacity must be developed and, therefore, the finding regarding Plaintiff's mental limitations may change. Consequently, it is likely that further testimony from a vocational expert may be required in order to determine what jobs in the national economy Plaintiff can perform with her limitations. Thus, the Court does not reach Plaintiff's arguments regarding the propriety of the ALJ's hypothetical question to the vocational expert in the proceedings below.

In considering whether vocational expert testimony is necessary, an ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations, such as mental limitations. *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert). Unless the vocational expert's testimony is not based on a claimant's complete set of limitations, then it has no evidentiary value. *See* Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).

D.   **Remand Is Necessary**.

In view of the ALJ's failure to adequately develop the record regarding Plaintiff's mental limitations and the probable need for further vocational expert testimony, this action must be remanded. *See* Hibgee, 975 F.2d at 562-63 (remanding case in order to develop the

record where the claimant was not represented at the initial administrative hearing); <u>Tackett</u>, 180 F.3d at 1104 (remanding case to the Commissioner in order to obtain testimony from a vocational expert based upon the claimant's non-exertional limitations); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2006

                                                    /s/
                                         MARGARET A. NAGLE
                               UNITED STATES MAGISTRATE JUDGE